UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
: 
DOMINICK J. DiPERNA, *et al.*, :
: CASE NO. 1:11-CV-852
Plaintiffs, :
:
v. : OPINION & ORDER
: [Resolving Doc. Nos. 34 & 53]
FORD MOTOR COMPANY, :
:
Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this race- and sex-discrimination and retaliation case, Defendant Ford Motor Company (Ford) moves for summary judgment. [Doc. 34.] Plaintiffs Jacqueline Wilson and Dominick DiPerna, Ford employees, oppose the motion. [Doc 40.] For the following reasons, the Court grants Ford's motion for summary judgment.[1]

I.

Jacqueline Wilson and Dominick DiPerna are both Ford employees. They also both are members of the United Auto Workers (UAW) union. This lawsuit arises from a December 2009 union election at one of Ford's Cleveland, Ohio, engine plants. The election—one of several held simultaneously at the plant—was for the post of Team Leader for the A-1 assembly line.

Wilson, a black female, alleges that she was rightfully elected to the Team Leader position

---

[1] Ford has also moved to exclude certain evidence from trial. *See* [Doc. 53.] That motion is denied as moot.

-1-

Case No. 1:11-CV-852
Gwin, J.

but that Ford refused to seat her in that post. Instead, Ford seated Gordon Mocniak, a white male and the only other candidate. Wilson asserts race- and sex-discrimination claims under Title VII of the Civil Rights Act of 1964 and Ohio Revised Code § 4112.02.[2/]

DiPerna, for his part, says that following the December 2009 election he filed a written complaint to the union accusing Ford of discriminating against Wilson. As a result, DiPerna says, Ford retaliated by disciplining him and denying him job opportunities. DiPerna asserts retaliation claims under Title VII and Ohio Revised Code § 4112.02(I).[3/]

* * *

Most of the facts are not genuinely disputed. Employees seek the Team Leader position; it is a prestigious position and gives increased pay and responsibilities. It is also an elected position, and so requires a candidate to win the confidence of not only her employer but her peers. Both Ford and the union screen the qualifications of candidates before the candidates are subject to election by "confirm[ing] the pool of qualified candidates." [Doc. 35-3, at 16.] That candidate "evaluation process [is] conducted jointly by [a union official] and [Ford] management before an election takes place" according to "evaluation criteria . . . developed by the joint parties." *Id.* An election is then "held in December." *Id.*

In October 2009, Ford and the union set the 2009 Team Leader elections for the first week of December. *Id.* at 4. By December 1, 2009, only two A-1 engine line members—Gordon Mocniak

---

[2/] Ford argues that Wilson's claims are preempted by Section 301 of the Labor Management Relations Act. Because the Court concludes that Wilson presents insufficient evidence of unlawful discrimination, it need not address this argument.

[3/] All agree that the same evidentiary standards apply to the Plaintiffs' federal- and state-law claims, such that the federal and state claims should be analyzed together.

Case No. 1:11-CV-852
Gwin, J.

and Plaintiff Dominick DiPerna—had signed up as potential candidates for the line's Team Leader election. *Id.* at 5. Plaintiff Wilson had not asked to be considered for the position. *Id.*

The election was scheduled for the following day. *Id.* Ford, however, disqualified DiPerna citing his "work record and leadership deficiencies." *Id.* at 6. So the election for the A-1 engine line was delayed while the union contested Ford's decision to disqualify DiPerna. *Id.* Two days of discussions did nothing to change Ford's mind and so by December 4, 2009, Mocniak was left as the only qualified candidate for the position of Team Leader. *Id.* Ford considered Mocniak—the unopposed incumbent—to be the new Team Leader for the A-1 engine line. *Id.*

Nevertheless, on December 7, 2009, Ford learned that the union had unilaterally added Plaintiff Wilson as a candidate and was planning to hold a Team Leader election between her and Mocniak. *Id.* Ford objected, pointing out that the collective-bargaining agreement permitted Ford the opportunity to evaluate and disqualify potential candidates, but the union proceeded with the election. *Id.* at 6-7. Wilson defeated Mocniak. *Id.* at 7.

After a failed attempt by Ford and the union to arrange a co-Team Leader solution, Ford insisted that Mocniak, not Wilson, was rightfully Team Leader. *Id.* at 7-8. Wilson and DiPerna then filed this lawsuit.

II.

The Court's first task at summary judgment is to determine whether there remains a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). If no such dispute exists, the Court "shall grant summary judgment if the movant . . . is entitled to judgment as a matter of law." *Id.* If, however, there is a genuine dispute as to any material fact, the Court must deny the motion so that the dispute can be resolved by the jury.

Case No. 1:11-CV-852
Gwin, J.

Not every factual dispute will preclude the entry of summary judgment. Only disputes about facts that are material, *i.e.*, "facts that might affect the outcome of the suit under the governing law," will preclude the entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, the factual dispute must be genuine, that is, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### A. Wilson's Claims

Because Wilson has no direct evidence of discriminatory motive, her claims are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citation omitted) (quoting *McDonnell Douglas*, 411 U.S. at 802-04).

Wilson's claims fail at the first step. She fails to make out a prima facie case. A prima facie case must contain evidence that the Plaintiff: (1) is a member of a protected class; (2) was otherwise qualified for promotion or hire; (3) was denied promotion or hire; and (4) was treated differently from similarly-situated employees outside the protected class. *See, e.g.*, *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009).

Wilson is a member of two protected classes; she is a black female. But she was not qualified for election to the post of Team Leader. Whatever her abilities, Wilson was not prequalified for the post in accordance with the collective-bargaining agreement. Even though the

Case No. 1:11-CV-852
Gwin, J.

election was scheduled for December 2, 2009, Wilson had not signed up with the other potential candidates and was not evaluated by Ford prior to the election. Indeed, her contrary assertions notwithstanding, *see* [Doc. 40, at 14], the record reflects that nobody informed Ford management of Wilson's intention to run until after the union had decided to hold an election. *See* [Docs. 42-26, at 32:4-33:14; 42-25, at 73:19-74:22.] At that point, Ford already considered Mocniak to be Team Leader.

Because only Mocniak and DiPerna told Ford of their intentions to run, and because only Mocniak was prequalified by Ford, only Mocniak was qualified to be elected to the position of Team Leader. Wilson, who ran and was elected without notice to and prequalification by Ford, was not similarly-situated.

Moreover, even if Wilson had established a prima facie case of discrimination, she has nothing to rebut Ford's legitimate, nondiscriminatory reason for denying her the post of Team Leader. While she criticizes the prequalification process in the collective-bargaining agreement as an imprecise "agreement to agree," she has no evidence that Ford selectively applied that prequalification requirement. To the contrary, Ford seems motived to reject Wilson to avoid relinquishing its contractual right to screen candidates before they stand for election. The closest she comes is to point out that many of the potential candidates were not *interviewed* by Ford, [Docs. 42-6; 42-7], but she does not explain why an interview, as opposed to a mere review of an employee's work and disciplinary record, is necessary to evaluate potential candidates for Team Leader. Nor does she have any competent evidence that any other employee was elected to a Team Leader position in December 2009 without first being screened by Ford. Ford disqualified Wilson to stop any relinquishment of its contractual right to pre-approve Team Leader candidates, not because of

Case No. 1:11-CV-852
Gwin, J.

Wilson's race or age.

Accordingly, there is insufficient evidence to give rise to an inference of unlawful discrimination.

### B. DiPerna's Claims

DiPerna's claims, too, are fatally flawed. "To make a *prima facie* case of Title VII retaliation, a plaintiff must prove: (1) he engaged in an activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Ford v. General Motors Corp.*, 305 F.3d 545, 552-53 (6th Cir. 2002).

DiPerna identifies one instance of protected activity: In February 2010, he submitted a written statement to the UAW accusing Ford management of discriminating against Wilson on account of her race and sex, among other things. *See* [Doc. 42-33.] Thereafter, DiPerna says, he suffered a variety of unwarranted disciplinary and adverse employment actions.

But, critically, DiPerna points to no evidence that anyone at *Ford* knew of his letter to the UAW. Instead, the evidence establishes the opposite. James Zmrazek, the UAW officer to whom DiPerna submitted the February 2010 complaint, testified that he kept DiPerna's statement "confidential" and did not give it to anyone else, including anyone in Ford management. [Doc. 42-26, at 69:13-71:25.][4] Moreover, DiPerna couldn't recall giving the letter to anyone other than Zmrazek, though DiPerna thought he might have included it in an April 2010 EEOC complaint.

---

[4] Zmrazek was another employee at the Ford engine plant. He had been elected to UAW office, but had never been a member of management. *See* [Doc. 42-26, at 8:23-10:19.]

Case No. 1:11-CV-852
Gwin, J.

See [Doc. 47-1, at 127:13-128:14.][5/]

Without any evidence that Ford knew about DiPerna's statement, there is no basis for a jury to find that Ford retaliated against DiPerna because of that statement. See *Kyle-Eiland v. Neff*, 408 F. App'x 933, 941 (6th Cir. 2011) (concluding that a plaintiff-employee in a retaliation suit had failed to demonstrate a genuine dispute of material fact because there was no evidence that the defendant-employer knew about the employee's protected activity). Accordingly, DiPerna's retaliation claims fail.

### III.

For these reasons, the Court grants the Defendant's motion for summary judgment and denies the Defendant's motion in limine as moot.

IT IS SO ORDERED.

Dated: January 17, 2012                    s/      *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE

---

[5/] DiPerna abandons any claim of retaliation arising out of that EEOC complaint, probably because all but one of the retaliatory incidents he alleges occurred *before* the filing of that complaint. See [Doc. 40, at 19 ("The Defendant's MSJ which speaks to the Plaintiff's EEOC activity and NLRB activity are not responsive to the Plaintiff's case which speak to these issues as background events. Again, if one wants to win an argument, the best way to do it is to change what you are arguing about." (citation omitted)).]